UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIDGEPORT MUSIC, INC., et al.,  )
                                 )
        Plaintiffs        )
                                 )     No. 3:01-1150
v.                         )     Judge Campbell/Brown
                                 )     **Jury Demand**
IRVING MUSIC, INC., et al.,    )
                                 )
        Defendants       )

TO: THE HONORABLE TODD J. CAMPBELL

<u>**REPORT AND RECOMMENDATION**</u>

Presently pending is the Defendants' motion for attorneys' fees and nontaxable costs (Docket Entry 148). This motion has been referred to the undersigned for a report and recommendation (Docket Entry 152).

The matter has been extensively briefed. The Defendants, in their original motion and supporting papers, filed some 840 pages (Docket Entries 148 thru 151). The Plaintiffs responded with some 221 pages of documents (Docket Entries 153 thru 159, and 161). The response engendered an additional 23 page reply (Docket Entry 164). Thus, a grand total of 1,084 pages have been generated over the fees, if any, to be awarded in this matter. For the reasons stated below, the Magistrate Judge recommends that the Defendants' motion be granted in part and that the Defendants be awarded attorneys' fees in the amount of $52,357.99 and costs in the amount of $3,920.

## BACKGROUND

As everyone reading this report knows, this case is part of the massive litigation that began in May of 2001, with Bridgeport's initial filing of some 1,000 pages of pleadings. That initial complaint was subsequently severed into 476 separate complaints, of which this is one. The matter has involved a massive amount of litigation, decisions by the District Court and decisions by the Court of Appeals in numerous cases, most of which are cited by the parties in the pleadings in this case. Many of the decisions by the District Court and the Court of Appeals have involved fee disputes. Unfortunately, litigation over fees at times has seemed to dwarf the litigation over the actual merits of the cases.

The pleadings in this case rehash the case history in great and largely unnecessary detail. Although the Defendants complain with considerable justification in their reply (Docket Entry 166) about the excessive length of the Plaintiffs' opposition (Docket Entry 153), the Magistrate Judge must note that their own memorandum of law (Docket Entry 149) repeated the same argument numerous times. They managed to cram, at most, 10 or 15 pages of information into 26 pages. Also, their material unfortunately left out what the Magistrate Judge most needed--a detailed breakdown of their bills.

2

The Plaintiffs in their response exceeded the Court's page limitation even after resorting to setting the margins for extra narrow and slipping in some additional pages in the guise of additional examples (Docket Entry 153-1). Unfortunately, from the Magistrate Judge's perspective, much of their brief was dedicated to rearguing matters that they had previously lost at the Magistrate Judge, District Judge, and Court of Appeals levels.

Both sides have continued to beat dead horses in this matter. From the Magistrate Judge's viewpoint, as the lowest judicial officer in this matter, he is the dead horse and, to the extent he is not dead, he has been ridden hard and put up wet.

Having now expressed frustration over the pleadings in this case and the fact that both parties appear to have passed up numerous excellent opportunities to have settled this matter, the Magistrate Judge will turn to the issue at hand.

The Defendants are the prevailing parties in this case and there is no doubt about that. The Magistrate Judge believes that in this case, as prevailing parties, they are entitled to reasonable fees and costs, although the Magistrate Judge is fully aware that the awarding of costs and fees is not mandatory. Nevertheless, the Magistrate Judge feels that the Plaintiffs in this case have pursued a weak claim far beyond what was reasonable and prudent. As the Magistrate Judge pointed out in his original report and recommendation on the Defendants' motion for summary

3

judgment, "In short, based on the undisputed facts, Bridgeport cannot show that Rondor has any connection whatsoever with the album 'Heroz4Hire'." (Docket Entry 129, p. 23). The Magistrate Judge further pointed out that Rondor was simply the wrong defendant for Bridgeport to sue. *Id.* at 24. Bridgeport did get a default judgment against No Savage Records, who appeared to be the main infringer in this case, but for some reason Bridgeport never sued Jeru's, although it did obtain a default judgment against Jeru's company, No Savage Records. Rondor was clearly considered the deep pocket Bridgeport wanted to reach.

The Magistrate Judge has considered Bridgeport's argument that it is a small company and entitled to some slack when suing multi-billion dollar companies, such as the Defendant. While Bridgeport has provided affidavits stating that it is a small company compared to multi-billion dollar Universal, they do not support this with financial statements or tax records. Granted, they are smaller than the Defendant in this matter. Nevertheless, the Magistrate Judge is not overly impressed by their claims of poverty. They certainly have demonstrated the ability to litigate these matters with extreme vigor.

**LEGAL DISCUSSION**

As the Sixth Circuit pointed out in its most recent opinion in this matter, *Bridgeport Music, Inc. v. WB Music Corporation*,2008 WL 762451 (6th Cir. 2008), under 17 U.S.C. § 505

4

the District Court may, in its discretion, award costs, including reasonable attorneys' fees, to the prevailing party, provided this discretion is exercised in an even-handed manner with respect to prevailing plaintiff and prevailing defendant, and in a manner consistent with the primary purpose of the copyright act (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). As the Sixth Circuit noted, "The grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely'." (Citations omitted). 2008 WL 762451 at p. 3.

The Sixth Circuit in that same opinion also noted from its *Rhyme Syndicate* decision, 376 F.3d 615 (6th Cir. 2004)at 628, "[I]t generally does not promote the purposes of the copyright act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable yet unsuccessful claim."

The Magistrate Judge has considered the *Fogerty* factors in this matter. No one factor is determinative and the Court may consider factors not listed by the *Fogerty* court. 2008 WL 762451 at p. 4.

In this case, the Magistrate Judge, for the reasons set forth in his original report and recommendation (Docket Entry 129), believes that, given the results of other cases and the status of proof in this case, that Bridgeport's continued litigation in this matter became unreasonable after completion of discovery. Unfortunately, Bridgeport missed an opportunity to throw in the

5

towel on this case and walk away before the summary judgment was filed April 25, 2006. (Docket Entry 90). They chose to continue to pursue a defendant against whom they had no real proof even after completing discovery.

Having concluded that the Defendants are entitled to some fees and costs, the Magistrate Judge will turn to the issue of what are appropriate fees and costs in this matter. The billing in this case is extremely complex because, as the Defendants point out, they were involved in over 100 cases growing out of Bridgeport's initial efforts and it is not always possible to sort out what time was spent on a single case. Likewise, as noted in other Bridgeport cases involving fee disputes, the Defendants have not been pristine in their own conduct and have certainly engaged in a considerable amount of hardball litigation themselves.

Turning now to the arduous task of determining allowable attorneys' fees and expenses in this matter, the Magistrate Judge would note that the parties have not been particularly helpful to the Court in this endeavor. The Defendants' memorandum in support (Docket Entry 149) only devotes two and one-half pages to the actual calculation of the amount of fees and expenses they request. However, at least they do finally lay them out using 10 numbered paragraphs in summary fashion with reference to supporting documents.

6

The Plaintiffs in their response are even less helpful. They do not respond directly to the 10 paragraphs set out in the Defendants' request. Instead, they use a scattergun approach. Had they responded specifically to Defendants' 10 paragraphs with specific amounts which they contended unallowable or concede as allowable, the Court's job would have been much easier.

**FEE ADJUSTMENTS**

The Magistrate Judge has reviewed the voluminous billing statements and objections of both sides and has considered the factors that are normally relevant in determining a lodestar amount. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *Paschal v. Flagstar Bank*, 297 F.3d 565 (6th Cir. 2002). None of these 12 factors are determinative and there may be other factors which are relevant. However, the Magistrate Judge concludes that this case did:

(1) Require considerable time and labor.

(2) Presented several new questions of copyright law.

(3) Required attorneys skilled in copyright law.

(4) This case did not appear to preclude the Defendants' attorneys from accepting other cases.

(5) The Magistrate Judge believes the customary fee in the Nashville area is appropriate. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000). The Magistrate Judge would note that in the *Adcock* case the court did allow some of the out of

7

district attorneys to use their Washington, DC, rates, rather than Knoxville, Tennessee, rates because the defendants in that case forced the plaintiff to take depositions in Washington and, in effect, to use Washington counsel. There are no such considerations in this case. While the Defendants' use of California counsel was reasonable, it was not required and the Magistrate Judge believes that as set out in *Adcock*, the reasonable rate for cases actually litigated here is the local rate. Accordingly, the Magistrate Judge will apply Nashville rates to the fee application.

(6) It is clear this case is billed on an hourly rate, rather than contingent fee basis. Accordingly, the Magistrate Judge is required to examine the billed hours to insure they are reasonable and necessary.

(7) The time limitations do not appear to be a factor one way or the other.

(8) The sums demanded by the Plaintiffs were substantial and the results obtained by the Defendants were excellent since they secured the dismissal of all the Plaintiffs' claims against their client.

(9) The experience, reputation, and ability of the attorneys is not a significant factor, as the Magistrate has allowed rates for attorneys who are considered highly experienced and capable.

8

(10) There is nothing undesirable about this case.   In fact, this is a case that most attorneys lick their chops for.

(11) It does appear that the California counsel has had a longstanding relationship with their client, and the Magistrate Judge certainly does not question the decision of the client to use California counsel in addition to local counsel.  However, since, admittedly, local counsel were qualified and available, the Magistrate Judge does not believe, as pointed out above, that it is necessary to allow California rates.

(12) From other cases growing out of this litigation, it appears that attorneys' fees have been allowed in some cases and denied in other cases.  Where they have been allowed, the rates generally have been the Nashville rates.

As to prevailing rates, the Magistrate Judge believes that Mr. Kirkpatrick's declaration (Docket Entry 151) establishes a reasonable rate for attorneys and paralegals in this area, except that he is a bit low for later years.

Given the numerous attorneys and paralegals with different billing rates, the Magistrate Judge has decided that an appropriate and practical way of determining reasonable rates is to use one blended rate for all attorneys and one for all paralegals. Any other method would simply produce an accounting nightmare.  The Defendants did break their claims down into discreet time frames (Docket Entry 180-1).  Some of these time frames extend slightly

9

into one year, or begin near the end of another year. Again, to simplify the accounting, the Magistrate Judge will use a single rate for these discreet periods. Given the volume of records, it is simply not reasonable to use a rifle to try to pin the amounts down to the penny. Much like grenades, the Magistrate Judge will simply try to get reasonably close.

The Magistrate Judge has, therefore, used for the period May 2001 through February 2002, the blended rate for all attorneys' work of $210 ph, and $80 ph for paralegals.

For the period of time involved in 2003, the Magistrate Judge has used a blended attorney rate of $260 ph, and a paralegal rate of $80 ph.

For the period of work from November 2004, through December 2006, a rate for attorneys' work of $280 ph, and for paralegals' work of $100.[1] For work thereafter, the Magistrate Judge has used a blended rate of $325 ph for attorneys and $100 ph for paralegals.

The Magistrate Judge will now turn to the specific requests of Defendants in paragraphs 1 through 10 (Docket Entry 149, pp. 23-25.[2]

---

[1] The Magistrate Judge will use these lower rates even though the Plaintiffs seem to only request a reduction to $125 ph for all paralegal work (Docket Entry 153, p. 27), but see Docket Entry 156.

[2] The figures are as summarized in Docket Entry 150-1 and 151, and the additional exhibits referred to therein.

10

1.    The Defendants have requested $8,285.72 for work from the beginning of the case in May of 2001, through February 12, 2002.    The Magistrate Judge's analysis of the breakdown is complicated when trying to use the summary of fees incurred contained in Docket Entry 151-1.  As an example, Docket Entry 150, Exhibit 1, lists attorneys and paralegals by initials. Unfortunately, they are arranged in no particular order, so it is difficult to easily tell who is an attorney and who is a paralegal. Additionally, although in a footnote there is an attempt to link names with initials, there is no name for the initial NXH or PG, and in the footnote there are a number of names and initials which do not appear on the exhibit.  It would have been far easier to have listed the categories of attorneys, associates, and paralegals in separate blocks.

The Magistrate Judge has recalculated the claims for paragraph 1 using the hours contained in Docket Entry 150-1, pp. 2 and 3, times the blended rate of $210 for attorneys and $80 for paralegals, as $5,067 for the Frackman firm, and $1,694 for the Kirkpatrick firm, for a grand total of $6,761.

The Magistrate Judge has not considered any fees for individuals designated as project assistants.  The Defendants do not clearly show the Magistrate Judge where these individuals fit in as between paralegals and secretaries.  Secretarial salaries should be included in the firm's overhead and not separately

11

billed.   In view of the lack of a clear definition of these individuals' works, the Magistrate Judge will consider them as closer to secretaries than paralegals and will disallow any separate claims for their services.

From the Magistrate Judge's recollection of the hectic early days in this case, the Magistrate Judge was concerned that both sides were being overly aggressive in the matter, with both their discovery requests and their contentious responses.  At that time it was not clear that the Plaintiffs had a weak case. Accordingly, the Magistrate Judge does not recommend the award of any fee for this work.[3]

2.   The Defendants request fees for the settlement conference in February of 2003, involving 95 cases.

For this period of time, the Magistrate Judge will apply a blended rate for all attorney work of $260 ph and $80 ph for paralegals.

Applying this blended rate to the hours listed on the summary (Docket Entry 150-1, p. 3) the Magistrate Judge calculates the Frackman claim using the blended rate to total $1,057.  The Magistrate Judge has examined the Kirkpatrick claim (Docket Entry 151, pp. 5, 6) and finds that they are showing time only for senior attorneys with no associates or paralegals.  This seems to be an

_____

[3]Should this be allowed, the Magistrate Judge would recommend the amount claimed be reduced by 25% to account for excessive work.

excessive use of senior attorneys and the Magistrate Judge will reduce the $80 claimed for this case to $60, making the claim a total of $1,117.

The Magistrate Judge recalls the settlement conference in which he participated with Judge Higgins as being frustrating with respect to the 95 cases that made up this claim. Neither side appeared to have any great interest in resolving these 95 cases. While a number of cases were resolved, these were not. Judge Higgins did make the comment that the Defendants made it clear that they were more interested in litigating than settling. Accordingly the Magistrate Judge believes this claim must be disallowed.[4]

3. The Defendants claim a sum of $2,885.90 for preparing discovery requests in 50 cases in November of 2004, and in responding to Bridgeport's discovery request in 44 cases. These claims are summarized in Docket Entry 150-1, Ex. 4. The Kirkpatrick firm has no claim for fees under this paragraph.

For the work in November and December of 2004, and January of 2005, the Magistrate Judge will apply a blended rate of $280 ph for attorneys' work and $100 ph for paralegal work. Using these figures, the Magistrate Judge calculates the work in November of 2004, summarized in Docket Entry 150-1, Ex. 4, to total $339. In applying the same blended rates of $280 ph for attorneys and

---

[4]If it was allowed, the Magistrate Judge would reduce the $1,117 by 75% due to the Defendants' lack of full cooperation.

13

$100 ph for paralegals, to the summary contained in Docket Entry 150-1, Ex. 5, the Magistrate Judge recalculates that claim to be $2,117 for a total of $2,456. Again, the Magistrate Judge finds that there was overly-aggressive litigation by both sides in this matter. However, at this stage, the Plaintiffs still had a basis for their litigation and the Magistrate Judge will not recommend any fee be allowed.[5]

4.   The Defendant has claimed fees in connection with 20 cases for discovery from November 2004, through January 2005, in the amount of $2,217. These fees are summarized in Docket Entry 150-1, Ex. 6. For this period of time, the Magistrate Judge will again use the same blended rate of $280 ph for attorneys and $100 ph for paralegals. Using these figures, the Magistrate Judge recalculates this claim to $1,660.

Again, the Magistrate Judge considers the discovery in this case as being overly-aggressive and that the Plaintiffs' claims were not clearly precluded. The Magistrate Judge will not recommend any fee be allowed.[6]

5.   The Defendants in this claim seek $11,941 for work in connection with the depositions taken in April and May 2005, on six cases when the District Judge lifted the stay on taking

---

[5]If any fee was allowed, the Magistrate Judge would reduce it by 25% for overwork.

[6]If their claim was allowed, the Magistrate Judge would reduce it by 25% for overwork.

14

depositions. Their claim in this matter is summarized in Docket Entry 150-1, p. 5, Ex. 7.[7] The Magistrate Judge will again use a blended rate of $280 ph, and $100 ph for paralegal work. The Magistrate Judge recalculates this claim to be $7,544. Again, the Magistrate Judge has reviewed a number of depositions taken in this case and is convinced the parties expended more time than necessary in taking depositions and, again, were overly-aggressive in their approach. Again, the Magistrate Judge believes that the Plaintiffs were still exploring the case and no fee should be allowed.[8]

6. This is a claim in September 2005, for $2,059 for responding to and moving to quash a set of untimely subpoenas issued in this case and three others. This claim was summarized in Docket Entry 150-1, p. 5, Ex. 8.

Again, applying a blended rate of $280 ph for attorneys and $100 ph for paralegals, the Magistrate Judge recalculates this claim to be $1,801. The Magistrate Judge believes that the Defendants were successful in this motion and that their claim is reasonable. Also, Plaintiffs caused this unnecessary work. Accordingly, the Magistrate Judge will recommend that this claim be allowed in the amount of $1,801.

---

[7]The Defendants lists supporting documents as Exhibit 1 and 6. It should be Exhibits 1 and 7.

[8]If this claim was allowed, the Magistrate Judge would reduce it by 25% for overwork.

7.    This is a claim for $29,315 in preparing a motion for summary judgment from October 2005, through August 2006.  They claim $26,885 for the Frackman firm and $2,430 for the Kirkpatrick firm (Docket Entry 150-1, p. 5, Ex. 9; Docket Entry 151, p. 6).

The Magistrate Judge will apply a blended rate of $280 ph for attorneys and $100 ph for paralegal work.  Thus, the Magistrate Judge recalculates the Frackman claim to be $20,868.    Mr. Kirkpatrick's claim is recalculated at $2,268 for a total claim of $23,136.

The Plaintiffs have taken serious objection to the amount claimed for the summary judgment motion, pointing out that the Defendants were able to reuse a considerable amount of materials from another summary judgment motion.  They point out that the Defendants even failed to change the name of the Defendant in some of their cut and paste work.  The Defendants in their reply point out that the Plaintiffs have been guilty of the same type of failure to fully edit the material they cut and paste.

The Magistrate Judge prepared a report and recommendation based on the pleadings in that matter.  The Plaintiffs had a number of claims in the matter and the motion plus the reply did require a considerable amount of work.  The Plaintiffs have complained in their objection (Docket Entry 153, p. 28) that the original motion was 11 pages, and there was a brief reply.  Thus, this work could not justify an exorbitant fee of over $29,000 for a motion for

16

summary judgment. What this objection fails to take into account is that in reviewing the documents, there were lengthy statements of undisputed facts (Docket Entry 92) and that the Plaintiffs in their lengthy response included a great number of exhibits and 38 statements of uncontested facts, to which the Defendants were required to respond (Docket Entry 122).

Additionally, of course, there were additional pleadings when Bridgeport objected to the Magistrate Judge's report and recommendation and the Defendants responded to those objections. All told, the time spent by the Defendants on the motion for summary judgment does not appear to be excessive, even if they were able to use some work from an earlier motion.

The Magistrate Judge believes, however, there may have been some duplication between local and California counsel, and that a reduction of 5% is appropriate, and the Magistrate Judge therefore recommends a reduction in the amount of the claim to $21,979.

8. The next claim by the Defendant is for $7,452 for preparing their initial fees motion in 2006. The substance of this claim is summarized at Docket Entry 151-1, p. 5, Ex. 10. The sole claim is for 20.7 hours <u>by an associate</u>. The motion was not actually filed since the Court deferred the time for filing an application for attorneys' fees until the matter was decided on appeal. As discussed in ¶10, the Defendants are also requesting

17

additional fees in connection with the filing of this motion for attorneys' fees.

The Magistrate Judge will reduce the allowable rate to $280 ph, for the associates and recalculate the claim to $5,769. The Magistrate Judge would also believe that a good bit of the work in preparing an application for attorneys fees is simply the gathering of data to present. It would appear to the Magistrate Judge that most of this work could have been accomplished by a paralegal. Accordingly, the Magistrate Judge believes that a more reasonable allocation of time would have been five hours for an attorney at $280 ph for a total of $1,400 and 15.7 hours of paralegal time at $100 ph for a total of $1,570. Therefore, the total recalculated amount is $8,739.

However, this is not the amount the Magistrate Judge recommends. The Sixth Circuit has established a "three percent rule," which limits the awards for attorney's fees requests to an amount not more than three percent of the hours awarded for litigating the main case. *Conter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir. 2007); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Specifically, the Sixth Circuit and the Supreme Court have cautioned that requests for attorney's fees "should not result in a second major litigation." *Id.* As such, the Sixth Circuit concluded that, in the absence of unusual circumstances, the compensable hours for preparing and successfully litigating a

18

fee petition should be limited to three percent of the hours in the main case since there was no trial. *Conter*, 510 F.3d at 620. Therefore, the Magistrate Judge believes that a total of $1,524.99 should be awarded in total for the requests in ¶¶ 8 and 10. This amount represents three percent of the total amount of fees the Magistrate Judge is recommending be awarded to the Defendants in the main case.

9. The Defendants claim in the year 2007, $39,215 in attorneys' fees for briefing and arguing Bridgeport's appeal in the Sixth Circuit. This matter is summarized at Docket Entry 150-1, p. 6, Ex. 11. The Magistrate Judge will apply a rate for senior attorneys in this matter of $350 ph. The Magistrate Judge believes that while Mr. Kirkpatrick had indicated that he had not raised his rate from $300 ph since 2004, he is under the market in Nashville for senior attorneys such as Mr. Frackman. Likewise, for 2007, the Magistrate Judge believes that an associate rate of $275 ph is appropriate. The Magistrate Judge therefore used a blended rate for attorneys of $325 ph. The Magistrate Judge will continue the rate of $100 ph for paralegals.

Applying those adjustments, the Magistrate Judge calculates this claim to be $27,053.

The Plaintiffs do not seem to take serious exception to the amount of time spent on the appeal, and the Magistrate Judge

does not believe any other reduction is necessary. Therefore, it should be allowed in the amount of $27,053.

The nontaxable costs are summarized at Docket Entry 150-1, p. 6, Ex. 12. The Defendants request $3,920 in nontaxable costs, which includes lodging and traveling in connection with the appeal. The Magistrate Judge does not see that the Plaintiffs have objected to this item. Accordingly, the Magistrate Judge recommends that this amount be allowed as requested.

10. The final item is a claim for $17,224 in attorneys' fees in connection with filing this present motion for attorneys' fees and their attempt to settle the attorneys' fees issue.

Much of this should have been accomplished in the earlier works summarized at ¶ 8. The Magistrate Judge notes that much of the work spent on this fee application should have been done by paralegals, and 31.4 hours in attorneys' fees is excessive. While the Magistrate Judge would calculate a more reasonable amount, as previously discussed in ¶8, the Defendants are entitled to, in total, $1,524.99 for the preparation of attorney's fees motion, which represents three percent of the total awarded in the main case. *Conter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir. 2007); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Magistrate Judge believes that this is an adequate sum to compensate the Defendants for preparing what should have been a routine fee application. This also considers the fact that the

20

Defendants were not successful in obtaining all the fees they requested.

## IV.    RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the Defendants' motion be granted in part and that the Defendants be awarded attorneys' fees in the amount of $52,357.99 and costs in the amount of $3,920. This amount includes $1,801 in ¶ 6, $21,979 in ¶7, and $27,053 in ¶9, totaling $50,833. As previously discussed, the Magistrate Judge also recommends that Defendants be awarded three percent of this amount for the preparation of the attorneys' fees motion, in the amount of 1,524.99.[9] As such, the total would be $52,357.99 in attorneys' fees.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has 10 days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have 10 days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within 10 days of receipt of this Report and Recommendation can

---

[9]If the Court allows additional fees or reduces the amount of recommended fees in the main case, this amount should be increased or reduced accordingly. If a 3% limit is not imposed, the Magistrate Judge would not recommend any allowance over $5,000. As it is, Defendants claimed a total of $24,696 for preparing a fee application and this became a case of the tail wagging the dog over fees.

21

constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

      **ENTERED** this 27th day of May, 2008.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge